UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDRA M. FRAZIER, | ) | CASE NO. 5:11CV1353 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| MATRIX ACQUISITIONS, LLC, et al., | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

   The Defendants in this case have filed a motion for summary judgment. (Doc. No. 9.) Plaintiff has filed an opposition to the motion (Doc. No. 14) and Defendants subsequently have replied (Doc. No. 15). While the motion for summary judgment was under advisement, the Court sua sponte raised the issue of whether this action is an impermissible collateral attack on a judgment and/or is barred by the doctrine of res judicata. The Court asked the parties to brief this issue, and they have done so. (Doc. Nos. 21 & 22.) For the reasons set forth below, Counts I and II of Plaintiff's complaint are DISMISSED with prejudice. Defendants' motion for summary judgment as to Count III is DENIED.

## I. BACKGROUND

   On June 4, 2010, Matrix Acquisitions, LLC ("Matrix") filed a lawsuit ("the underlying action") against Edra M. Frazier ("Frazier" or "Plaintiff") in the Summit County, Ohio, Court of Common Pleas to collect on a credit card debt that Matrix had purchased from Dodeka, LLC. *See Matrix Acquisitions, LLC v. Edra Frazier*, Case No. 2010 06 4031 (Summit

Cnty. Comm. Pl.) (Doc. No. 1-3, Ex. A). Dodeka had purchased the debt from the credit card issuer, Chase Bank USA. (Doc. No. 1-3, Ex. A.) On September 16, 2010, Matrix obtained a default judgment against Frazier in the underlying action for the sum of $17,007.56, plus accrued interest in the amount of $13,128.90 through August 18, 2010 and any future interest at 24%. (Doc. No. 9-1, Ex. C.)

Frazier then filed the instant action in the Summit County Court of Common Pleas on June 2, 2011. (Doc. No. 1-3.) On behalf of herself and all others similarly situated,[1] plaintiff alleged that Matrix, Cheek Law Offices, LLC ("Cheek"), and Attorney Jackson T. Moyer ("Moyer"; collectively, "Defendants") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.* ("OCSPA").[2] Cheek Law Offices attorney Moyer represented Matrix in the underlying action. Count I of Frazier's complaint alleges that the underlying action was time-barred at the time it was filed and that, in filing such a time-barred action, Defendants violated the FDCPA. (Compl., Doc. No. 1-3, ¶¶ 132–226.) Count II alleges that this purported time-bar infringement also violated the OCSPA, because "[e]very violation of the FDCPA constitutes a violation of the [O]CSPA." (*Id.* ¶¶ 227–43.) Count III alleges that Defendants violated the FDCPA—and, thus, the OCSPA—by filing the underlying action in an improper venue. (*Id.* ¶¶ 244–60.)

Frazier seeks to "secure redress from the unlawful credit and collection practices engaged in" by Defendants. (*Id.* ¶¶ 9, 16.) As to Counts I and II of her complaint, Frazier asserts

---

[1] Plaintiff purports to act on behalf of "all others similarly situated" only as to Counts I and II. As to Counts I and II, there has been, to date, no motion filed to certify a class. Count III is an individual claim.

[2] Plaintiff alleges that Matrix is a "debt collector" within the meaning of the FDCPA and a "supplier" within the meaning of the OCSPA. (Compl. ¶¶ 30, 31.) Plaintiff alleges the same with respect to Cheek (*Id.* ¶¶ 68, 70) and Moyer (*Id.* ¶¶ 73, 75).

that the underlying action was "time-barred by Ohio Rev. Code § 2305.03(B)." (*Id.* ¶ 128; *see also* ¶¶ 131, 134.) She further alleges that commencing and maintaining a time-barred action is "a deceptive collection practice[,]" a "'false representation of the character' 'or legal status of' debt," and an "unfair or unconscionable" method of debt collection, all in violation of the FDCPA. (*Id.* ¶¶ 137, 138, 139.) Frazier alleges that the Defendants "continue to prosecute and maintain time-barred debt collection lawsuits, like the one they continue to prosecute against [Frazier], even when it is clear that such lawsuits are time-barred and therefore utterly without merit." (*Id.* ¶ 164.) Finally, Frazier alleges that she "has been damaged as a result of [the underlying action] against her[] [and that] . . . Matrix has actually collected funds" from her on the allegedly time-barred complaint. (*Id.* ¶ 167.) In subsection (i) of her prayer for relief, Frazier seeks, *inter alia*, to "[q]uash all garnishment actions against [her] which were commenced in the Summit County Common Pleas Court[.]" (*Id.* ¶ 261(i).) Frazier further seeks a "refund of all moneys collected by or on behalf of Matrix resulting from consumer debt collection complaints that were time-barred." (*Id.* at ¶ 261(j).)

Defendants removed the present action to federal court on July 1, 2011, on the basis of 28 U.S.C. § 1331. Prior to the case management conference, Defendants filed a motion for summary judgment (Doc. No. 9), which Plaintiff opposed. After the Court took the motion under advisement, it became apparent that Matrix had obtained a default judgment against Plaintiff in the underlying action, followed by garnishment proceedings, which Plaintiff is seeking to quash by way of a remedy in this action. By order dated March 14, 2012, the Court directed the parties to brief the question of whether the instant action is an impermissible collateral attack on the state court judgment in the underlying action and/or whether the present

3

action is barred by the doctrine of res judicata.[3] Those briefs have been filed. (Doc. Nos. 21 & 22.)

## II. DISCUSSION

### A. Res Judicata

#### 1. Legal Standard

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (In claim preclusion analysis, a federal court "must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered."). Therefore, in determining whether the present case is barred by res judicata, this Court looks to the state law of Ohio. "Under Ohio law, the doctrine of res judicata consists of the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citations and internal quotation marks omitted). Regarding these two branches of the res judicata doctrine—claim preclusion and issue preclusion—it is clear that issue preclusion does not apply here. This is because, for issue preclusion to apply, one must demonstrate that "the fact or issue" in question "was actually and directly litigated in the prior action." *State ex rel. Davis v. Pub. Emps. Ret. Bd.*, 120 Ohio St. 3d 386, 392 (2008). In this case, the underlying action resulted in a default judgment against

---

[3] Although Defendants raised in their answer the defense that this action is "barred by the doctrine of res judicata, collateral estoppel, issue preclusion and/or claim preclusion[,]" they inexplicably failed to raise this argument in their motion for summary judgment. Therefore, the Court required separate briefing on the issue.

4

Frazier. "In the case of a judgment entered by . . . default, none of the issues is actually litigated." *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27 (1982)).

But claim preclusion is a different story. In *Grava v. Parkman Township*, 73 Ohio St. 3d 379, 382 (1995), the Ohio Supreme Court held that a "valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Relying primarily on this holding, the Sixth Circuit has stated that claim preclusion under Ohio law has four elements: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citation omitted).

### 2. Claim Preclusion

The first element's requirement of a "final, valid decision on the merits" is broader than the issue preclusion requirement of "actual[] and direct[] litigation in the prior action" and is met here. As the record clearly indicates, default judgment was entered against Frazier in the underlying action. "Ohio case law expressly recognizes that '[a] default judgment is a valid and final judgment upon the merits, and it can be, therefore, a proper bar to later claims for purposes of claim preclusion." *Chapman v. PNC Bank*, No. 1:11CV2229, 2012 WL 163040, at *4 (N.D. Ohio Jan. 18, 2012) (quoting *Stand Energy Corp. v. Ruyan*, No. C-050004, 2005 WL 2249107 (Ohio Ct. App. Sept. 16, 2005)); *see Morris v. Jones*, 329 U.S. 545, 550–51 (1947)

("'A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default.'" (quoting *Riehle v. Margolies*, 279 U.S. 218, 225 (1929)); *Astar Abatement, Inc., v. Cincinnati City Sch. Dist. Bd. of Educ.*, No. 1:11CV587, 2012 WL 481799, at *6 (S.D. Ohio Feb. 14, 2012) ("Under Ohio law, default judgments are judgments on the merits which can be attacked only on direct appeal. Default judgment, therefore, can act as a bar to alter claims under the doctrine of claim preclusion." (citations omitted)).

The second element is also met here. Frazier was herself the sole defendant in the underlying action and is now the plaintiff in the case at bar. Likewise, Matrix was the sole plaintiff in the underlying action and is now a defendant in this case. Frazier argues, however, that because new defendants Cheek and Moyer were not named parties in the underlying action, the "same parties, or their privies" requirement is not met. To support this proposition, Frazier directs the Court to *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783 (S.D. Ohio 2006).

In *Foster*, the court found that the second element of claim preclusion was not met where the underlying state collection action had been brought only by the collection agency, DBS, itself and the subsequent FDCPA action also named the sole proprietor of DBS and DBS's attorney as defendants. *Id.* at 797. In determining that the sole proprietor and attorney could not be said to be in privity with the collection agency for purposes of claim preclusion, the court in *Foster* relied on *Lennon v. Neil*, 139 Ohio App. 3d 437 (11th Dist. 2000).[4] In the passage quoted

---

[4] The court in *Foster* also cited *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003), for the proposition that the "rule of differing capacities" negated the argument that DBS's sole proprietor was in privity with DBS. *Foster*, 462 F. Supp. 2d at 797 n.14. But *Mitchell* involved separate suits against Post Office officials both in their official and in their individual capacities. Indeed, the court in *Mitchell* explicitly stated that the "rule of differing capacities generally operates to allow a subsequent individual capacity suit against a *governmental official* even where a prior suit alleged an official capacity claim against the same official." *Mitchell*, 343 F.3d at 823 (citations omitted) (emphasis added).

6

by the *Foster* court, *Lennon* stated that "[o]ne is in privity with another if he/she succeeds to an estate or an interest formerly held by the other." *Lennon*, 139 Ohio App. 3d at 445 n.4. It seems as though the court in *Foster* viewed this language from *Lennon* as *limiting* privity to situations where there was a succession "to an estate or interest formerly held by the other" rather than as merely *describing* a type of situation where privity is in fact present. For two reasons, the latter is the better reading. First, in the sentence directly preceding the quoted passage, the *Lennon* court defined privity as "a succession of interest *or* relationship to the same thing," thereby indicating that privity is not limited to succession circumstances like those described in the subsequent sentence but rather that it also includes other "relationship[s]". *Id.* (emphasis added). Second, *Lennon* dealt with a factual situation that involved succession. In *Lennon*, the plaintiff, the fee simple owner of a piece of real estate, was barred from prosecuting a suit to remove the residential-use-only restriction from the real estate in question because a previous fee simple owner of that same lot had already been a party to an identical type of suit. Privity rested on succession to the first owner's "estate or interest," and the court tailored its description of the privity requirement accordingly.

Other case law clearly demonstrates that privity, for purposes of claim preclusion, extends well beyond succession "to an estate or an interest formerly held by the other." The Ohio Supreme Court has acknowledged that "what constitutes privity in the context of *res judicata* is somewhat amorphous." *Brown v. Dayton,* 89 Ohio St. 3d 245, 248 (2000). "As a general matter, privity is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within *res judicata*." *Id.* Fleshing out this somewhat-circular definition, the Ohio Supreme Court stated that privity does not require a "contractual or beneficiary relationship" and that "a mutuality of interest, including

an identity of desired result, creates a privity" between parties for purposes of claim preclusion. *Id. See ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank*, 333 F. App'x 994, 999 (relying on the *Brown* excerpts, above); *Elec. Enlightenment, Inc. v. Kirsch*, No. 23916, 208 WL 2814327, at *2 (Ohio Ct. App. July 23, 2008) (defining privity as "such an identification of interest of one person with another as to represent the same legal right").

Here, Moyer and Cheek were in privity with Matrix for purposes of claim preclusion. "[I]t is well settled that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship." *ABS Industries*, 333 F. App'x at 999. The purpose behind the privity requirement is to ensure that the rights of an individual who is not a party to the original action (typically, one who could have been a *defendant* in the original action) are adequately protected. None of the parties—Frazier or the Defendants—were unprotected here.

The third element requires a "second action raising claims that were or could have been litigated in the first action." The scope of claims covered by this prong is quite broad. In fact, the breadth of this prong serves to prevent "not only relitigati[on of] a claim previously adjudicated; it also precludes litigati[on of] a claim *or defense* that should have been raised, but was not, in the prior suit." *Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) (citation omitted) (emphasis added); *see also Kline v. Mortg. Electr. Sec. Systems*, No. 3:08CV408, 2011 WL 1118485, at *6 (S.D. Ohio Feb. 16, 2011) ("under Ohio *res judicata* doctrine, the question is not what claims [a party] opted to include, but what claims he *could have* included in the prior state court action" (citation, internal quotation and alterations omitted)). The two alleged bases for Frazier's current complaint—that the underlying action was time-barred and that venue in the underlying action was improper—should both have been brought as defenses in the debt

8

collection action. This is to say nothing of the FDCPA and OCSPA claims themselves, which also could have been brought as counterclaims at that time. *See, e.g., Sessley v. Wells Fargo Bank*, No. 2:11CV348, 2012 WL 726749, at *2 (S.D. Ohio March 6, 2012) (recounting procedural history of a FDCPA and OCSPA case and stating that FDCPA and OCSPA claims had originally been brought as counterclaims and crossclaims during the original foreclosure action itself); *Asset Acceptance L.L.C. v. Caszatt*, No. 2009-L-090, 2010 WL 1254325 (Ohio Ct. App. Mar. 31, 2010) (debtor who had been sued on a credit card account counterclaimed against the creditor, alleging that the credit card action was time-barred). Because the time-bar and venue issues could—and should—have been raised as part of the underlying action, this third prong is met here.

The fourth and final prong requires that the second action arise "out of the transaction or occurrence that was the subject matter of the previous action." The Ohio Supreme Court has adopted the definition of "transaction"—found in the Restatement (Second) of Judgments—as a "common nucleus of operative facts." *Grava*, 73 Ohio St. 3d at 382 (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)). At times in FDCPA cases arising out of prior debt collection actions, courts have held that this prong is not met because the FDCPA claim centers on unfair debt collection practices that do not go to the validity or "collectability" of the debt. *See, e.g., Foster*, 463 F. Supp. 2d at 798 (finding that this fourth element was not met because the underlying debt collection cases "addressed the class members' alleged liability to repay certain debts" while the subsequent FDCPA action addressed "the allegedly unlawful misrepresentations Defendants made during the process of collecting such debts"). But as to Counts I and II, the case at bar is fundamentally different from such cases. Here, the sole basis for Frazier's Counts I and II FDCPA and OCSPA claims is that the underlying action was filed

9

in violation of the applicable statute of limitations. This statute of limitations argument could and should have been raised as a defense *to the validity or collectability of the debt itself* in the underlying case. The issue of whether the collection action was time-barred would have gone directly to the heart of the validity of the underlying action and the collectability of the debt. Counts I and II of the present complaint, based entirely on the time-bar issue, therefore arise from the same "nucleus of operative fact"—the circumstances surrounding the legal status of the credit card debt—as the underlying action. This fourth prong is therefore met as to the time-bar issue and Counts I and II of the present case.

The same cannot be said of the venue issue addressed in Count III of Frazier's complaint. Frazier certainly could—and should—have raised improper venue as a defense in the underlying action. *See Green v. Hocking*, 9 F.3d 18, 20 (6th Cir. 1993), abrogated on other grounds by *Heintz v. Jenkins*, 514 U.S. 291 (1995) (the venue provision of the FDCPA "specifically makes it unlawful to instigate a lawsuit in a venue not authorized by the Act"). But Frazier's neglect of this defense did not have the same effect as her neglect of the time-bar defense, for the venue defense would not have gone to the validity or collectability of the debt itself. Rather, its effectiveness would have been limited to forcing a transfer of the underlying action to, or a refiling of the underlying action in, the proper venue.[5] Because the question of proper venue does not share a "common nucleus of operative fact" with the question of the validity of the debt itself, the fourth prong is not met as to Count III.

---

[5] Of course, even assuming, arguendo, that the underlying action was brought in an improper venue, Frazier still could not challenge the validity of that action now, as she has at this point waived such a defense. *See* Ohio R. Civ. P. 12(H). Thus, allowing the venue portion of Frazier's case to proceed does not imperil the finality or enforceability of the state court's judgment and garnishment order(s) in the underlying action.

### 3. Additional Considerations

Additional considerations support the conclusion that Counts I and II must be dismissed. Permitting Frazier to proceed on these Counts would effectively permit her to challenge the final default judgment and the subsequent garnishment proceedings against her in the underlying action. Were this Court to conclude, on the merits of plaintiff's FDCPA and OCSPA claims, that the underlying action was actually time-barred,[6] it would be permitting Frazier to challenge in federal court the validity of a final Ohio state court judgment that she opted not to appeal—or even defend—in state court. Plaintiff was properly served in the underlying action and chose not to answer or otherwise defend. She does not argue otherwise.

As previously stated, "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, *supra*; *see Abbott v. Michigan*, *supra* (In claim preclusion analysis, a federal court "must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered."). In Ohio, the "collateral attack" doctrine "disfavors the authority of one court to revisit a judgment of another court, in another proceeding, in other than very limited circumstances." *Ohio Pyro, Inc. v. Ohio Dep't of Commerce*, 115 Ohio St. 3d 375 (2007). As the Ohio Supreme Court noted in *Ohio Pyro,* "[i]n our jurisprudence, there is a firm and longstanding principle that final judgments are meant to be just that—final." *Id.* at 380 (citation omitted). "[S]ubject to only rare exceptions, direct attacks, i.e., appeals, by parties to the litigation, are the primary way that a civil judgment is challenged." *Id.* "[I]t necessarily follows

---

[6] The Court takes no view on the would-be merits of Frazier's time-bar argument.

11

that collateral or indirect attacks are disfavored and that they will succeed only in certain very limited situations." *Id.*

> It has long been the law of Ohio that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit. (Emphasis added.) *Rogers v. Whitehall*[, 25 Ohio St. 3d 67, 69 (1986)]. "[W]here a party is called upon to make good his cause of action . . . , he must do so by all the proper means within his control, and if he fails in that respect . . . , he will not afterward be permitted to deny the correctness of the determination, nor to relitigate the same matters between the same parties." *Covington & Cincinnati Bridge Co. v. Sargent*[, 27 Ohio St. 233 (1875)], paragraph one of the syllabus. The doctrine of *res judicata* "encourages reliance on judicial decisions, bars vexatious litigation, and frees the court to resolve other disputes." *Brown v. Felsen*,[442 U.S. 127, 131 (1979)]. "Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if . . . conclusiveness did not attend the judgments of such tribunals . . . ." *Southern Pacific Rd. Co. v. United States*[, 168 U.S. 1, 49 (1897)].

*Nat'l Amusements, Inc. v. City of Springdale*, 53 Ohio St. 3d 60, 62 (1990).

Perhaps recognizing that such an attack on a valid state court judgment would be impermissible, Frazier, in her additional brief requested by the Court, seems go out of her way to contend that she is not challenging the validity of the state court judgment. (*See, e.g.,* Pl. Supp. Brief, Doc. No. 22, at 5 (Frazier's "[c]omplaint does not assert that she doesn't owe money on the [state court j]udgment.")) But this assertion is belied not only by the claim preclusion analysis set forth above but also by the relief requested by Frazier. Frazier does not confine the relief she requests to that provided for by the FDCPA (15 U.S.C. § 1692k) or the OCSPA (Ohio Rev. Code § 1345.09(B)); she also seeks to undo the effects of the final judgment and garnishment order(s) entered in the underlying action by requesting that this Court, inter alia, "[q]uash all garnishment actions against [Frazier] which were commenced in the Summit County Common Pleas Court" and "[o]rder a refund of all moneys collected by or on behalf of Matrix resulting from consumer debt collection complaints that were time-barred." (Compl. ¶¶ 261(i) &

12

(j)); *cf. Todd v. Weltman Weinberg & Reis Co., LPA*, No. 1:03CV171, 2008 WL 419943, at *6 (S.D. Ohio Feb. 14, 2008) (finding that claim preclusion did not bar plaintiffs' FDCPA claims in part because plaintiffs were "not challenging the amount they owe[d] to their creditors, but instead challenge[d] the practices of [d]efendants employed when they attempted to collect" the debt).

The Court recognizes that Frazier has brought Counts I and II as a class action; however, no motion to certify a class has been filed and no class has yet been certified. Therefore, although there *may* be persons who could properly challenge the propriety of Defendants' actions when it comes to the issue of time-bar, Frazier is not one of those persons. This ruling is not prejudicial to Frazier because she had an opportunity in the underlying action to raise the time-bar defense, as well as the time-bar-based claims under the FDCPA and the OCSPA that she articulates in Counts I and II. *See, e.g.*, *Asset Acceptance L.L.C. v. Caszatt*, No. 2009-L-090, 2010 WL 1254325 (Ohio Ct. App. Mar. 31, 2010) (debtor who had been sued on a credit card account counterclaimed against the creditor, alleging that the credit card action was time-barred). Plaintiff chose not to take that route, suffering a default judgment, which is a final judgment entitled to full faith and credit by this Court.

### B. Summary Judgment as to Count III

#### 1. Legal Standard

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

13

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina College v. Russell*, 499 U.S. 225 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  Moreover, "the

14

trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### 2. Analysis

It is with this standard in mind that the Court turns its attention to Defendants' motion for summary judgment as to Count III. As stated previously, Count III alleges that the Defendants violated the venue provision of the FDCPA (and, by extension, the OCSPA) when Defendants filed the underlying action in Summit County, Ohio, Common Pleas Court. The FDCPA venue provision states as follows:

> (a) Venue
> Any debt collector who brings any legal action on a debt against any consumer shall—
>> (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
>> (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—
>>> (A) in which such consumer signed the contract sued upon; or
>>> (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1962i(a).

15

Under the terms of the statute, suit could have been brought against Frazier in the judicial district (here, county) (1) where she signed the credit card contract or (2) where she resided at the time the underlying action was commenced. In her complaint, Frazier claims that Defendants violated the statute when they filed the underlying action in Summit County because (1) she never signed a credit card contract with Chase Bank USA and (2) she lived in Portage, not Summit, County at the time the underlying action was commenced. (Compl. ¶¶ 245, 247–28.)

In the single paragraph of their motion for summary judgment dedicated to Count III, the entirety of Defendants' argument as to why the judgment on this Count should be granted in their favor is as follows: Defendants provide the address given by Frazier when she applied for the credit card, state that the address is in Summit County, and conclude by stating that § 1962i "permits a debt collector to bring an action in the judicial district where the consumer signed the contract sued upon." (Doc. No. 9 at 14.) All three of these statements may very well be—indeed, likely are—true. But that is of little import. Defendants, in their motion for summary judgment, offer no supporting documentation, and even no argument, to refute Frazier's assertion that she did not live in Summit County "at the commencement of" the underlying action or that she actually "signed [a] contract" with Chase Bank USA relating to the credit card account while residing at the Summit County address. Defendants fail to produce any such contract or even any documents suggesting that Frazier lived in Summit County at the time the suit was commenced.

Frazier, in her opposition (Doc. No. 14), denies Defendants' bald assertion that the venue constraints found in § 1962i were complied with and provides documentation, in compliance with Rule 56, that supports her position. These documents include an affidavit sworn by Frazier herself, wherein she states that she "signed no contract with respect to her Chase

16

credit card account." (Doc. No. 14-6.) Frazier also supplied a copy of her apartment lease indicating her residence was in Portage County at the time the underlying action was commenced. (Doc. No. 14-5.) Viewing the evidence in the light most favorable to the non-moving party (here, Frazier), a genuine issue of material fact as to whether Frazier signed a credit card contract in Summit County still exists. Summary judgment as to Count III must therefore be DENIED.

Defendants also contend that Frazier signed credit card receipts when purchasing goods and services in Summit County and that she is therefore subject to suit in Summit County under the terms of 1962i(a)(2). But Defendants failed to include this argument in the motion for summary judgment, raising it only in their reply (Doc. No. 15) in support of their summary judgment motion. Moreover, as support, they cite only to the credit card statements attached to their motion for summary judgment, which merely indicate that some purchases on Frazier's account were made in Summit County. Defendants provide no evidence that Frazier signed the receipts that presumably accompanied these purchases or that case law supports the contention that such signed receipts would meet the signed contract requirement of § 1962i(a)(2)(A). Additionally, while Defendants also indicate in their reply that they may attempt to rely on the bona fide error defense, they fail to flesh out how that defense might apply to Count III.

If either party desires, however, the Court will permit additional motion practice to determine if either party is entitled to judgment as a matter of law relative to Count III.

17

## CONCLUSION

For the reasons stated, the Court concludes that Counts I and II of this action are barred by the doctrine of claim preclusion and accordingly should be—and are—**DISMISSED** with prejudice. Count III is not barred by the doctrine of claim preclusion, and Defendants have failed to meet their burden in moving for summary judgment. Defendants' motion for summary judgment is therefore **DENIED** as to Count III.

**IT IS SO ORDERED**.

Dated: March 29, 2012

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

18